IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ANITA WOLF,

    Plaintiff,

v.

CAROLYN W. COLVIN,
Acting Commissioner of the Social Security
Administration,

    Defendant.

Civ. No. 3:14-cv-01507-MC

**OPINION AND ORDER**

**MCSHANE, Judge**:

    Plaintiff Anita Wolf brings this action for judicial review of a final decision of the Commissioner of Social Security denying her application for disability insurance benefits (DIB) under Title II of the Social Security Act. This Court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3).

    The issues before this Court are: (1) whether the Administrative Law Judge (ALJ) erred in evaluating the medical opinions of Drs. MacNeal, Clements, and Movius; (2) whether the ALJ erred in evaluating plaintiff's credibility; (3) whether the ALJ erred in evaluating a lay witness's credibility; and (4) whether additional evidence submitted to the Appeals Council undermines the evidentiary basis for the ALJ's findings. Because the ALJ articulated sufficient reasons supported by substantial evidence in his evaluation of the respective evidence and, to the extent that he erred, such errors were harmless, the Commissioner's decision is AFFIRMED.

### PROCEDURAL AND FACTUAL BACKGROUND

1 – OPINION AND ORDER

Plaintiff applied for DIB on June 11, 2009, alleging disability since January 1, 2006. Tr. 91, 109, 199–202. This claim was denied initially and upon reconsideration. Tr. 91, 141–42, 145–48, 151–53. Plaintiff timely requested a hearing before an Administrative Law Judge (ALJ) and appeared before the Honorable Jo Hoenninger on October 2, 2012. Tr. 91, 103–40. ALJ Hoenninger denied plaintiff's claim by a written decision dated October 26, 2012. Tr. 91–98. Plaintiff sought review from the Appeals Council, which was subsequently denied, thus rendering the ALJ's decision final. Tr. 5–8. Plaintiff now seeks judicial review.

Plaintiff, born on September 21, 1959, tr. 97, 109, 135, obtained her Bachelor of Science degree, tr. 111, 220, and worked most recently as a registered nurse (1989–2009), tr. 112, 203–05. Plaintiff was forty-six at the time of alleged disability onset and fifty-three at the time of her hearing. *See* tr. 97, 109, 135. Plaintiff alleges disability due to obesity and degenerative disk disease of the lumbar spine. *See* tr. 93, 108.

## STANDARD OF REVIEW

The reviewing court shall affirm the Commissioner's decision if the decision is based on proper legal standards and the legal findings are supported by substantial evidence on the record. *See* 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). To determine whether substantial evidence exists, this Court reviews the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion. *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986).

## DISCUSSION

The Social Security Administration utilizes a five-step sequential evaluation to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. The initial burden of proof rests

upon the claimant to meet the first four steps. If a claimant satisfies his or her burden with respect to the first four steps, the burden shifts to the Commissioner for step five. 20 C.F.R. § 404.1520. At step five, the Commissioner's burden is to demonstrate that the claimant is capable of making an adjustment to other work after considering the claimant's residual functional capacity (RFC), age, education, and work experience. *Id.*

Plaintiff contends that the ALJ's disability decision is not supported by substantial evidence and is based on an application of incorrect legal standards. In particular, plaintiff argues that: (1) the ALJ erred in evaluating the medical opinions of Drs. MacNeal, Clements, and Movius; (2) the ALJ erred in evaluating plaintiff's credibility; (3) the ALJ erred in evaluating a lay witness's credibility; and (4) additional evidence submitted to the Appeals Council undermineS the evidentiary basis for the ALJ's findings.

## I. Medical Opinions

Plaintiff contends that the ALJ erred in evaluating: a letter submitted by treating physician Dr. MacNeal, *see* tr. 292; functional limitations identified by examining physician Dr. Clements, *see* tr. 372–77; and a physical ability assessment form submitted by treating physician Dr. Movius, *see* tr. 358–62. In response, defendant argues that the ALJ provided sufficient reasons for according "significant weight" to Dr. MacNeal's letter and partially rejecting the functional limitations identified by Dr. Clements. *See* Def.'s Br. 5–9, ECF No. 10. Defendant also argues that the ALJ's failure to address functional limitations identified by Dr. Movius constitutes a harmless error. *See id.* at 9–10.

"To reject an uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (citing *Lester v. Chater*, 81 F.3d 821, 830–31 (9th Cir.

3 – OPINION AND ORDER

1995)). "If a treating or examining doctor's opinion is contracted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Id.* (citation omitted). When evaluating conflicting medical opinions, an ALJ need not accept a brief, conclusory, or inadequately supported opinion. *Id.* (citing *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001)).

## A. Dr. MacNeal

Plaintiff met with Nancy J. MacNeal, M.D., more than fifteen times between March 2005 and August 2012.[1] On or about September 23, 2009, Dr. MacNeal submitted a letter responding to an agency request for information relating to plaintiff's functional limitations. In that letter, Dr. MacNeal explained:

> [I]t is this examiner's opinion that the only problem [plaintiff] has is standing for long durations over an operating table which produces low back pain. Mrs. Wolf absolutely refuses to use narcotics while on the job, [and] isn't interested in retraining for a different position. While I am sympathetic to her problem of chronic back pain, there are many, many other people I attend who manage to hold down more physically challenging positions tha[n] her position. There are positions that she could do within her own profession with her current limitation that she has decided she doesn't want to pursue, one example would be a sit down job as a triage nurse. I was frankly shocked that her employer's long term disability plan accepted her claim. After attending her for over 4 years, I see a woman who makes up her mind that this is how it is going to be and will not back down until she gets what she wants. It is very difficult to get her to open her mind and look at other options.

Tr. 292; *see also* tr. 308, 395 (In a treatment note dated December 26, 2006, Dr. MacNeal reported that she didn't "frankly see why [plaintiff] couldn't find a sedentary job in nursing like so many others and get a strong sense that she doesn't want to work if it means she needs to take

---

[1] Tr. 295–98, 402–05 (3/30/2005); tr. 298–99, 400–01, 491–92 (10/31/2005); tr. 300–02, 398–400 (2/10/2006); tr. 303–04, 397–98 (3/15/2006); tr. 305–07, 396–97 (7/10/2006); tr. 396 (10/9/2006); tr. 308–09, 394–95 (12/26/2006); tr. 310–12, 392–94 (5/22/2007); tr. 313–15, 388–90 (8/18/2008); tr. 316–17, 387–88 (1/15/2009); tr. 318–19, 386–87 (7/22/2009); tr. 383–85, 493–95 (1/5/2010); tr. 496–98 (2/1/2011); tr. 499 (12/14/2011); tr. 490–92, 500 (6/11/2012); tr. 487–89, 501–03 (8/27/2012).

4 – OPINION AND ORDER

med[ications] for back pain."). The ALJ, having reviewed this letter, gave "Dr. MacNeal's opinion significant weight" because it was based upon an extended treatment relationship, supported by medical signs and laboratory findings, and was consistent with the record. Tr. 95.

Plaintiff contends that Dr. MacNeal engaged in "only cursory examinations" of plaintiff's back prior to submission of the letter and that the medical signs and laboratory findings did not support the letter. *See* Pl.'s Br. 5–6, ECF No. 9. This Court is not persuaded.

Prior to submitting the letter, Dr. MacNeal treated plaintiff approximately eleven times. *See supra* § I(A) n.1. Physical examination results between March 2005 and August 2008 revealed normal DTRs, gait, motor tone, and sensory screening exam. *See* tr. 296, 404 (3/30/2005); tr. 311, 393 (5/22/2007); tr. 314, 389 (8/18/2008); *see also* tr. 308, 295 (In a treatment note dated December 26, 2006, Dr. MacNeal reported that plaintiff "walk[ed] in unassisted."). In addition to these examinations, Dr. MacNeal also reviewed "plain films l-spine and pelvis of 3/3/06 done at PPMC showing mild disk space narrowing L5-S1 and [normal] pelvis." Tr. 303, 397; *see also* tr. 279–80 (PPMC records dated 3/3/2006). These examination results, which constitute substantial evidence, can reasonably be interpreted to support Dr. MacNeal's letter.

Plaintiff next contends that Dr. MacNeal's letter is contradicted by a subsequent statement dated December 11, 2012. *See* Pl.'s Br. 6, ECF No. 9. That statement provided:

> I have had the honor of attending nurse Wolf since 2005 [and] can attest to her inability/disability to hold down a job as a nurse because of chronic pain. Loss of her vocation [and] chronic pain have resulted in depression. Unfortunately I don't see this situation changing in the foreseeable future; surgery not felt to be an option.

5 – OPINION AND ORDER

Tr. 84. The Appeals Council determined that this statement reflected a "later time" and did not "affect the decision about whether [plaintiff was] disabled beginning on or before October 26, 2012." Tr. 6. This determination was reasonable.[2]

Although not discussed by plaintiff, this Court notes that Dr. MacNeal submitted a lumbar spine medical source statement dated July 31, 2013. *See* tr. 77–80.[3] That medical source statement, unlike the earlier statement dated December 31, 2012, relied on additional clinical findings; an MRI dated March 4, 2013. *See* tr. 77 (citing tr. 81–82). Nonetheless, the Appeals Council reasonably determined that this medical source statement did not affect the ALJ's decision during the alleged disability period. *See* tr. 6.

## B. Dr. Clements

Plaintiff met with Christopher Clements, M.D., for a thirty-minute physical examination on October 24, 2009. *See* tr. 372–77. As a result of that examination and review of additional medical records,[4] Dr. Clements opined that plaintiff was able to: sit for up to six hours; stand and walk up to two hours; lift and carry less than 10 pounds frequently; climb, stoop, kneel, crouch, and crawl occasionally; balance frequently; and reach, handle, finger, and feel frequently. Tr. 376.

---

[2] Plaintiff met with Dr. MacNeal five additional times between September 2009 and December 2012. *See* tr. 383–85, 493–95 (1/5/2010); tr. 496–98 (2/1/2011); tr. 499 (12/14/2011); tr. 490–92, 500 (6/11/2012); tr. 487–89, 501–03 (8/27/2012). During this treatment, Dr. MacNeal administered two relevant physical examinations. *See* tr. 384, 494 (1/5/2010); tr. 496–98 (2/1/2011). Relevant examination results in 2010 were normal. *See* tr. 384, 494. However, in 2011, for the "first time," Dr. MacNeal "noticed that when [plaintiff] lays down on the table, she presses proximal thighs away from her hips using her hands and she explains that these are much more comfortable." Tr. 497. This single observation during the alleged disability period is insufficient to create ambiguity as to whether Dr. MacNeal's December 2012 statement applies retroactively. *See also* tr. 448 (On December 1, 2010, Neal E. Berner, M.D., concluded that plaintiff was able to perform light work.).

[3] This Court notes that Dr. MacNeal declined to complete similar disability paperwork in 2006. *See* tr. 395 ("I do find it curious that [plaintiff] asked me to complete [the disability forms] rather than Dr. Movius the back specialist.").

[4] Dr. Clements reviewed Dr. MacNeal's treatment records, an MRI taken in August 2004, and plain film taken at PPMC in March 2006. *See* tr. 372.

6 – OPINION AND ORDER

The ALJ rejected these functional limitations to the extent they differed from the RFC[5] because they were inconsistent with Dr. MacNeal's letter dated September 23, 2009, and with observations included in a Cooperative Disability Investigation Unit (CDIU) report dated April 13, 2010. *See* tr. 96.

As discussed above, Dr. MacNeal's letter dated September 23, 2009, was supported by substantial evidence. *See supra* § I(A). Because it was written by Dr. MacNeal, who is a *treating* physician, it is accorded more weight than functional limitations opined by Dr. Clements, who is an *examining* physician. *See Ghanim v. Colvin*, 763 F.3d 1154, 1160–61 (9th Cir. 2014). Moreover, the CDIU report, which was based on a forty-minute interview that occurred *after* the physical examination, included observations that were largely inconsistent with Dr. Clements's findings. *Compare* tr. 376 ("Maximum lifting and carrying capacity is less than 10 pounds both occasionally and frequently. . . ."), *with* tr. 241 (reporting that plaintiff dragged her forty-pound puppy "across the living room, down the central hallway, through the kitchen/dinette to the sliding door onto the rear deck"); *see also infra* § II (discussing the CDIU report). These reasons are specific and legitimate.

In any event, an error is harmless if "inconsequential to the ultimate nondisability determination." *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006). During the administrative hearing, the ALJ posed an alternative hypothetical question to the vocational expert (VE) that incorporated Dr. Clements's opined limitations. That hypothetical provided:

> I'd like you to assume a hypothetical individual limited to sedentary work. Can lift 10 pounds both occasionally and frequently, can climb ramps and . . . stairs only occasionally. . . . Can climb ladders, ropes and scaffolds never, can only occasionally stoop, kneel, crouch and crawl, can balance frequently, reaching hand and fingering feeling frequently. And for this,

---

[5] The ALJ found that plaintiff was able "to perform the full range of light work." Tr. 94.

7 – OPINION AND ORDER

>for your response to this, please provide occupations for which there are transferrable skills from claimant's past job.

Tr. 133–34. The VE testified that such a claimant could work as a consultant nurse (DOT § 075.1127–014), an occupation that exists in significant numbers in the national economy. *See* tr. 97–98, 133–34. Thus, even had an error been committed, such an error was harmless.

### C. Dr. Movius's Opinion

Plaintiff self-referred to Rosalie Movius, M.D., LLC, for nonsurgical management of back problems. *See* tr. 300, 398. Plaintiff met with Dr. Movius approximately ten times between January and October 2006.[6] On October 26, 2006, Dr. Movius submitted a physical ability assessment form on plaintiff's behalf. *See* tr. 361–62. In that form, Dr. Movius opined that plaintiff was able to sit, stand, and walk occasionally, lift 20 pounds occasionally and 10 pounds frequently, and carry 20 pounds occasionally. *See id.* Dr. Movius also opined that plaintiff should never balance, stoop, crouch, or crawl. Tr. 361. These limitations were based on an MRI taken in August 2004, plain film taken at PPMC in March 2006, and physical examinations administered during treatment. *See* tr. 359.

Plaintiff contends that the ALJ committed a harmful error when he failed to address this assessment form. *See* Pl.'s Br. 7–8, ECF No. 9. In response, defendant argues that the alternative hypothetical question posed by the ALJ to the VE was "consistent" with Dr. Movius's opined limitations, and to the extent they differed, such differences in limitations did not impact plaintiff's ability to work as a consultant nurse (DOT § 075.1127–014). *See* Def.'s Br. 9–10, ECF No. 10.

---

[6] Tr. 290 (1/18/2006); tr. 287–89 (1/25/2006); tr. 285–86 (1/30/2006); tr. 283–84 (2/8/2006); tr. 277–78 (4/21/2006); tr. 370 (7/25/2006); tr. 369 (8/16/2006); tr. 368 (8/29/2006); tr. 365–66 (10/11/2006); tr. 363 (10/27/2006).

8 – OPINION AND ORDER

As discussed above, the ALJ posed a more restrictive alternative hypothetical question to the VE. *See supra* § I(B). Because that alternative hypothetical question incorporated most of Dr. Movius's opined limitations, this Court's inquiry is limited to whether the ALJ's inclusion of less restrictive postural limitations—occasional stooping, crouching and crawling, and frequent balancing—is consequential to the ultimate nondisability determination. *Compare* tr. 361 (prohibiting balancing, stooping, crouching, and crawling), *with* tr. 133–34 (limiting hypothetical claimant to frequent balancing, and occasional stooping, crouching and crawling).

The occupation at issue, consultant nurse, is defined in the DOT as skilled sedentary work. DOT § 075.127–014. Although postural activities "are not usually required in sedentary work," SSR 96-9P, 1996 WL 374185, at *7 (July 2, 1996), a complete prohibition on such activities *may* impact an individual's ability to perform sedentary work, *see* SSR 85-15, 1985 WL 56857, at *7 (Jan. 1, 1985) ("Some stooping (bending the body downward and forward by bending the spine at the waste) is required to do almost *any* kind of work." (emphasis added)). The duties of a consultant nurse are described as follows:

> Advises hospitals, schools of nursing, industrial organizations, and public health groups on problems related to nursing activities and health services: Reviews and suggests changes in nursing organization and administrative procedures. Analyzes nursing techniques and recommends modifications. Aids schools in planning nursing curriculums, and hospitals and public health nursing services in developing and carrying out staff education programs. Provides assistance in developing guides and manuals for specific aspects of nursing services. Prepares educational materials and assists in planning and developing health and educational programs for industrial and community groups. Advises in services available through community resources. Consults with nursing groups concerning professional and educational problems. Prepares or furnishes data for articles and lectures. Participates in surveys and research studies.

9 – OPINION AND ORDER

DOT § 075.127–014. This description does require any stooping, crouching, crawling, or balancing.[7] Even assuming that limited postural activities could be *inferred*, this Court is not persuaded that Dr. Movius's assessment form is inconsistent with such *inferred* postural activities. The assessment form itself suggests that Dr. Movius did not intend to prohibit all balancing, stooping, crouching, and crawling *as defined by the Social Security Administration*. For example, Dr. Movius authorized plaintiff to return to work as a registered nurse (DOT § 075.364-010),[8] which is *medium* skilled work, on a part-time basis. *See* tr. 132, 360. Plaintiff reported that in that role she regularly engaged in postural activities, e.g., crouching and crawling, and spent extended periods of time walking and standing. *See* tr. 116, 217. If Dr. Movius had intended to adhere to the Social Security Administration's definition of balancing, stooping, crouching, and crawling, he could not have prohibited these postural activities *and* authorized plaintiff to return to work as a registered nurse. Thus, the ALJ's failure to address Dr. Movius's assessment form constitutes a harmless error.

## II. Plaintiff's Credibility

---

[7] This Court notes that plaintiff made no argument as to whether the duties of a consultant nurse included postural activities.
[8] DOT § 075.364-010 describes the duties of "Nurse, General Duty" as follows:

> Provides general nursing care to patients in hospital, nursing home, infirmary, or similar health care facility: Administers prescribed medications and treatments in accordance with approved nursing techniques. Prepares equipment and aids physician during treatments and examinations of patients. Observes patient, records significant conditions and reactions, and notifies supervisor or physician of patient's condition and reaction to drugs, treatments, and significant incidents. Takes temperature, pulse, blood pressure, and other vital signs to detect deviations from normal and assess condition of patient. May rotate among various clinical services of institution, such as obstetrics, surgery, orthopedics, outpatient and admitting, pediatrics, and psychiatry. May prepare rooms, sterile instruments, equipment and supplies, and hand items to SURGEON (medical ser.) 070.101-094; OBSTETRICIAN (medical ser.) 070.101-054, or other medical practitioner. May make beds, bathe, and feed patients. May serve as leader for group of personnel rendering nursing care to number of patients.

10 – OPINION AND ORDER

Plaintiff contends that the ALJ improperly rejected her testimony. *See* Pl.'s Br. 9–13, ECF No. 9. In response, defendant argues that the ALJ properly weighed plaintiff's testimony. *See* Def.'s Br. 10–15, ECF No. 10.

An ALJ must consider a claimant's symptom testimony, including statements regarding pain and workplace limitations. *See* 20 CFR §§ 404.1529, 416.929. "In deciding whether to accept [this testimony], an ALJ must perform two stages of analysis: the *Cotton* analysis and an analysis of the credibility of the claimant's testimony regarding the severity of her symptoms." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). If a claimant meets the *Cotton* analysis[9] and there is no evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Id.* (citing *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993)). This Court "may not engage in second-guessing," *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (citations omitted), and "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation," *Andrews v. Shalala*, 53 F.3d 1035, 1039–40 (9th Cir. 1995) (citations omitted).

The ALJ found that plaintiff was "a less than credible witness." Tr. 96. In making this determination, the ALJ relied on two bases, including: (1) statements made by treating physician Dr. MacNeal; and (2) plaintiff's activities of daily living. *See* tr. 96–97.

First, as to statements made by Dr. MacNeal, the ALJ found:

> Dr. M[a]cNeal[] opined that the claimant's physical impairments would not preclude her from work in her field, and described the claimant as a person "who makes up her mind that this is how it is going to be and will not back down until she gets what she wants. It is very difficult to get her to open her mind and look at other options[.]" Dr. M[a]cNeal stated in

---

[9] "The *Cotton* test imposes only two requirements on the claimant: (1) she must produce objective medical evidence of an impairment or impairments; and (2) she must show that the impairment or combination of impairments *could reasonably be expected to* (not that it did in fact) produce some degree of symptom." *Smolen*, 80 F.3d at 1282 (citing *Cotton v. Bowen*, 799 F.2d 1403, 1407–408 (9th Cir. 1986)).

11 – OPINION AND ORDER

> 2006 that she found it "curious" that the claimant asked her to complete disability forms rather than the back specialist, and "I don't frankly see why she couldn't find a sedentary job in nursing likes so many others and get a strong sense that she doesn't want to work if it means she needs to take med[ications] for back pain[.]"

Tr. 96 (citations omitted). An ALJ may rely on a treating physician's opinion to form the basis of an adverse credibility determination. *See* 20 C.F.R. §§ 404.1529(c)(3); 416.929(c)(3). As discussed above, the ALJ properly evaluated a letter submitted by Dr. MacNeal in 2009. *See supra* § I(A). In that letter, as in various treatment notes, Dr. MacNeal questioned plaintiff's willingness to seek alternative employment and concluded that plaintiff's impairment did not prevent her from working in a sedentary nursing occupation. *See* tr. 395 (12/26/2006); tr. 292 (9/23/2009). As a result, this reason is clear and convincing.

Second, the ALJ found that plaintiff's daily activities were not consistent with her alleged degree of impairment. *See* tr. 96–97. The ALJ explained:

> [T]he claimant testified that she can only sit for a few minutes, cannot stand without leaning on something, and sits reclining about 10 hours a day. The claimant testified that in her house she is able to walk from the sofa to the bathroom and she often drops items she attempts to carry. However, a [CDIU] report in April of 2010 indicated that the claimant was seen attempting to calm her dog by standing bent at the waist, flat-footed on the floor, and then spending 2 minutes wrestling the forty pound dog and pulling the dog across the floor like a sack of potatoes. The claimant then sat on the sofa without restriction of movement, no frequent shifting of position, and no verbal complaints of pain. The claimant walked with no limping or irregularity of gai[t], was able to sit, bend, and pull an active forty-pound dog through the house without difficulty or complaint. . . . At the hearing, I also observed the claimant opening the door to the hearing room on her own, and walking and sitting without appearing to be under the duress that she alleges causes her severe physical limitations.

Tr. 96 (citations omitted). An ALJ may rely on daily activities to form the basis of an adverse credibility determination if those activities contradict a plaintiff's testimony or involve the performance of physical functions that are transferable to a work setting. *Orn v. Astrue*, 495 F.3d

12 – OPINION AND ORDER

625, 639 (9th Cir. 2007); *see also* SSR 96-7P, 1996 WL 374186, at *5 (July 2, 1996) ("In instances where the individual attends an administrative proceeding conducted by the adjudicator, the adjudicator may also consider his or her own recorded observations of the individual as part of the overall evaluation of the credibility of the individual's statements."). Defendant contends that plaintiff's daily activities contradict her testimony. Def.'s Br. 11–15, ECF No. 10. This Court looks to the record.

On October 2, 2012, plaintiff testified that she cannot sit for more than a few minutes, cannot stand without leaning on something, and cannot walk farther than nominal distances, e.g., from her sofa to the bathroom. *See* tr. 118–19. Plaintiff also testified that because of her pain level, which fluctuated between a five and ten on a ten-point scale, she sat in a reclined position for about 10 hours each day. *See* tr. 118–20.

Plaintiff's functionality, as evidenced by plaintiff's observed daily activities, is reasonably interpreted as greater than alleged. For example, the ALJ relied extensively on a CDIU report dated April 13, 2010. In that report, a Special Agent (SA) from the United States Office of the Inspector General documented his observations of plaintiff during a forty-minute contact interview. *See* tr. 235–44. The SA reported in relevant part: plaintiff "wrestl[ed]" with a forty-pound yellow Labrador puppy for two minutes; plaintiff dragged the dog backwards by its front paws across the living room, down the central hallway, through the kitchen/dinette to the sliding door onto the rear deck, like a "sack of potatoes"; plaintiff sat facing the agent on a sofa without any restriction of movement or frequent shifting of position; and plaintiff rose from her seat on the sofa three separate times to leave the room, walking in a normal fashion without using any kind of assistive device. *See* tr. 241–42. The SA also noted that plaintiff did not exhibit any pain behavior during the interview. *See id.*; *see also* tr. 96 ("At the hearing [on October 2,

13 – OPINION AND ORDER

2012], [the ALJ] also observed the claimant opening the door to the hearing room on her own, and walking and sitting without appearing to be under the duress that she alleges causes her severe physical limitations."). The ALJ, having considered this evidentiary record, reasonably determined that many of plaintiff's statements relating to functionality were inconsistent with her observed daily activities; thereby undermining her credibility. *See Sours v. Colvin*, No. 6:13–cv–01528–SI, 2014 WL 4793894, at *6 (D. Or. Sept. 25, 2014) (concluding that an ALJ properly relied upon a CDIU report to discount plaintiff's credibility).

### III. Lay Witness's Credibility

Plaintiff contends that the ALJ improperly rejected functional limitations identified by lay witness Larry Wolf. Pl.'s Br. 13–15, ECF No. 9. In response, defendant concedes error,[10] but argues that such an error was harmless because the ALJ properly rejected plaintiff's similar testimony. *See* Def.'s Br. 15–16, ECF No. 10.

"Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001) (citation omitted); *see also Merrill ex rel. Merrill v. Apfel*, 224 F.3d 1083, 1085 (9th Cir. 2000) ("[A]n ALJ, in determining a claimant's disability, must give full consideration to the testimony of friends and family members." (citation omitted)). An ALJ's failure to articulate such a germane reason is nonetheless harmless if that "testimony does not describe any limitations not already described by the claimant, and the ALJ's well-supported reasons for rejecting the

---

[10] This Court notes that Mr. Wolf indicated in a letter dated December 13, 2012, that he did not believe he could be objective when it came to plaintiff. *See* tr. 87 ("I guess I can't be objective.").

14 – OPINION AND ORDER

claimant's testimony apply equally well to the lay witness testimony." *See Molina v. Astrue*, 674 F.3d 1104, 1117 (9th Cir. 2012).

Mr. Wolf, plaintiff's husband, submitted a third-party function report on September 27, 2009, tr. 222–29; testified during plaintiff's administrative hearing on October 2, 2012, tr. 128–31; and submitted an additional letter dated December 13, 2012, tr. 87. In the function report, Mr. Wolf reported that plaintiff: had difficulties standing, tr. 223–24, 228; required an assistance device when walking, e.g., plaintiff used "a [shopping] cart to support herself" while grocery shopping, tr. 225; and had limitations in lifting, squatting, bending, reaching, kneeling, and stair climbing, tr. 228. At the administrative hearing, Mr. Wolf again reported that plaintiff had difficulties bending and standing, and required an assistance device when walking. *See* tr. 129–30. In the letter, Mr. Wolf identified a number of "accommodations" made because of plaintiff's functional limitations. *See* tr. 87. Those accommodations were consistent with Mr. Wolf's earlier reported observations. *Compare* tr. 87 ("I do literally all house and yard work. I drive her wher[ever] she needs to go."), *with* tr. 224–25 ("I do or hire out for Indoor [and] outdoor chores. . . . I do the driving."). Mr. Wolf's description of plaintiff's functional limitations is generally similar to plaintiff's own testimony. *Compare* tr. 129–30, 223–25, 228, *with* tr. 118–20. Thus, even assuming an error had been committed, such an error was harmless.[11]

## IV. Additional Evidence

Plaintiff submitted additional evidence to the Appeals Council following receipt of the ALJ's written opinion. *See* tr. 23–87. That additional evidence includes the following: treatment

---

[11] Plaintiff's friend, Joanne Peterson, also submitted a letter on plaintiff's behalf. *See* tr. 85. In that letter, which was dated December 11, 2012, Ms. Peterson reported that plaintiff had difficulties standing and walking, and was "now at the point of needing adaptive equipment . . . such as a walker, or a wheelchair or scooter for walking events." *See id.* These observations, like those of Mr. Wolf, are generally similar to plaintiff's own testimony and were properly rejected in the ALJ's consideration of plaintiff's own credibility.

15 – OPINION AND ORDER

records from the Laser Spine Institute between March 5, 2013, and September 17, 2013, tr. 23–76; a lumbar spine medical source statement from treating physician Dr. MacNeal, tr. 77–80; a letter dated December 11, 2012, from treating physician Dr. MacNeal, tr. 84; a letter dated December 11, 2012, from lay witness Ms. Petersen, tr. 85; a completed "Application for Parking Permit for an Individual with a Disability," tr. 86; and a letter dated December 13, 2012, from lay witness Mr. Wolf, tr. 87. Because the Appeals Council incorporated the additional evidence into the administrative record and considered it in deciding not to review the ALJ's decision, this Court must consider that evidence in determining whether the ALJ's decision is supported by substantial evidence. *See Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1159–60 (9th Cir. 2012).

As discussed in previous sections, the additional lay witness evidence and Dr. MacNeal's subsequent statements do not undermine the evidentiary basis for the ALJ's findings during the disability period: January 1, 2006, to October 26, 2012. *See supra* §§ I(A), III n.11. This reasoning also applies to plaintiff's subsequent treatment at the Laser Spine Institute.[12] Plaintiff underwent two back surgeries in 2013. The first surgery, which occurred on March 5, 2013, resulted in improvement. *See, e.g.*, tr. 24, 64–65, 80. Plaintiff underwent additional MRI/CT and lumbar spine x-rays in early September 2013. As a result of these findings, e.g., a disk bulge above the level previously treated was identified at the L4/5 level, *see* tr. 23, plaintiff underwent a second surgery on September 11, 2013, tr. 27–29. This subsequent treatment, which occurred between five and eleven months *after* the ALJ's decision, does not undermine the evidentiary basis for the ALJ's findings.

---

[12] Tr. 31–36, 49–55, 59–60, 69–74 (3/4/2013); tr. 42–48, 57–58, 61, 75–76 (3/5/2015); tr. 66–68 (3/8/2015); tr. 65 (3/11/2015); tr. 62–64 (3/22/2013); tr. 23–26 (9/10/2013); tr. 27–29 (9/11/2013).

16 – OPINION AND ORDER

## CONCLUSION

For these reasons, the Commissioner's final decision is AFFIRMED.

IT IS SO ORDERED.

DATED this 16 day of July, 2015.

                                      **Michael J. McShane**
                                      **United States District Judge**